**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTINA KIRVEN,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 25-2506 (JEB)** |
| **NATIONAL NETWORK OF PUBLIC HEALTH INSTITUTES,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION**

In June 2025, Plaintiff Christina Kirven, a Black woman, was terminated from her director-level role at the National Network of Public Health Institutes (NNPHI), a non-profit organization with offices in Washington, D.C., and Louisiana. The stated basis for termination was corporate-expense misconduct. Kirven paints a different picture. In her rendition, the expense rationale was the final, pretextual blow in a sustained campaign of retaliation and race and sex discrimination.

Proceeding *pro se*, she brought this employment action against NNPHI and three of its executives: Defendants Vincent Lafronza (President and CEO), Tyra Alexander (Director of Human Resources), and Kim Ramsey (Senior Vice President for Finance and Administration). The three now move to dismiss for lack of personal jurisdiction. Because the record contains material gaps, the Court will hold the Motion in abeyance pending jurisdictional discovery and declarations identifying the individual Defendants' residences.

1

## I.    Background

According to the Complaint, whose facts the Court credits at this stage, Kirven joined NNPHI's D.C. office in 2022.  See ECF No. 27-2 (Third Am. Compl.), ¶¶ 3.1, 4.1.  In 2023, she earned a promotion to Director of Administrative Operations but, despite solid performance, was paid less than similarly situated White or male colleagues.  Id., ¶¶ 4.1, 7.2, 9.5.3.  During her tenure, management accused Kirven of multiple corporate-expense violations, id., ¶¶ 6.2, 7.4, while she reported various concerns including unequal compensation, expense-policy "inconsistencies," and "a hostile work culture."  Id., ¶¶ 1.2, 4.6, 5.4, 6.4.  NNPHI terminated her employment in June 2025, citing the expense misconduct.  Id., ¶¶ 4.7, 5.1–5.3, 5.5, 6.2, 7.4.

Plaintiff's suit sets forth 18 counts against NNPHI and several of its senior employees spanning federal law (under Title VII, the Equal Pay Act, and the False Claims Act); D.C. statutory law (under the D.C. Wage Payment and Collection Law, the D.C. Wage Theft Prevention Amendment Act, and the D.C. Human Rights Act); and various common-law theories.  Id., ¶¶ 9.2–9.5.6.  At root, she alleges retaliation for her reporting efforts, id., ¶¶ 1.2, 3.2, 4.8, 5.5; unequal treatment and compensation, id., ¶¶ 4.1, 4.3–4.5, 4.8, 7.2–7.3; and unlawful termination.  Id., ¶¶ 1.2, 4.7, 5.5, 6.4, 7.5.

To Kirven, the alleged mistreatment was a "death by a thousand cuts," id., ¶ 1.3, resulting in financial, emotional, and professional harm, among other impacts.  Id., ¶¶ 8.1, 8.3–8.4.  She seeks monetary, equitable, and declaratory relief, including reinstatement, compensatory and punitive damages, and modification of her personnel records.  Id., ¶¶ 8.4, 10.1–10.6.

NNPHI answered the Complaint in March 2026.  See ECF No. 17 (Answer).  The individual Defendants now move to dismiss for lack of personal jurisdiction.  See ECF Nos. 28 (Mot.); 28-1 (Supp. of Mot.).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss if the court lacks personal jurisdiction over her.  The plaintiff bears the burden of establishing such jurisdiction, see Erwin-Simpson v. AirAsia Berhad, 985 F.3d 883, 888 (D.C. Cir. 2021), and its requirements "must be met as to each defendant." Rush v. Savchuk, 444 U.S. 320, 332 (1980).  The Court resolves factual discrepancies in favor of the plaintiff.  Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990).  Conclusory statements, however, are insufficient to satisfy the plaintiff's burden.  IMAPizza, LLC v. At Pizza Ltd., 334 F. Supp. 3d 95, 107–08 (D.D.C. 2018).

When personal jurisdiction is challenged, a court may look beyond the four corners of the complaint to other evidence.  See Sharp Corp. v. Hisense USA Corp., 292 F. Supp. 3d 157, 165–66 (D.D.C. 2017).  As complaints filed by *pro se* parties are to be liberally construed, see Haines v. Kerner, 404 U.S. 519, 520 (1972), and "supplement[ation]" should be readily permitted, the Court will consider facts adduced in Plaintiff's Complaint and her other filings.  Brown v. Whole Foods Mkt. Grp., 789 F.3d 146, 152 (D.C. Cir. 2015).

## III.    Analysis

The Court first determines whether personal jurisdiction exists here and then whether jurisdictional discovery is warranted.  It may exercise personal jurisdiction over Defendants only if permitted by both D.C. law and the Constitution's Due Process Clause.  See United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995).  Personal jurisdiction may either be in the form of general or specific jurisdiction.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

3

A.        General Jurisdiction

Due process permits general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state, regardless of whether such contacts triggered the underlying suit.  Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quotation marks omitted). General jurisdiction ordinarily turns on an individual defendant's domicile.  Id. at 137 (citing Goodyear, 564 U.S. at 924).  D.C. law mirrors this requirement: courts "may exercise personal jurisdiction over a person domiciled in" the District.  See D.C. Code § 13-422.

There are two "essential elements of domicile": "[r]esidence in fact" and a defendant's "purpose to make the place of residence one's home."  Texas v. Florida, 306 U.S. 398, 424 (1939).  Courts have accordingly rejected domicile in D.C. where defendants do not reside in this city.  See, e.g., Bigelow v. Garrett, 299 F. Supp. 3d 34, 43 (D.D.C. 2018) (defendant residing in Virginia "not 'domiciled' in [D.C.] for purposes of" § 13-422); Lambert L. Firm v. Hansel, 2024 WL 4987026, at *2 (D.D.C. Dec. 5, 2024) (no jurisdiction where plaintiff failed to "allege that [defendant was] domiciled in D.C." and complaint cited "Maryland office address").

To be sure, Kirven does not assert that the individual Defendants live in D.C.  See Third Am. Compl.; ECF Nos. 30 (Opp.) (focusing on Defendants' business activities, not their residences); 30-2 (Exhs.).  Nor does she otherwise allege where they reside.  Id.  She states only that NNPHI itself "resides or conducts business" in D.C.  See Third Am. Compl., ¶ 2.1.  While she asserts ties between the individual Defendants and NNPHI's D.C. office, see Opp., this says nothing about their personal residences.

It is also worth noting that the individual Defendants offer no evidence of where they reside.  See Mot. at 1; Supp. of Mot. at 1–6.  There is thus no conclusive basis for determining domicile in either the parties' substantive filings or the surrounding record.  Compare, e.g., ECF

4

Nos. 5-1 (Cert. of Serv.) at 1–2 (listing NNPHI's Louisiana address for individual Defendants in their "[i]ndividual[-][d]efendant capacity"); 6 (Notice) at 2 (same), with, e.g., ECF Nos. 14 (Feb. Summons) at ECF p. 3 (citing NNPHI's D.C. address for defendant); 25 (Summons Receipt) at ECF p. 1 (same).

Although Plaintiff has not carried her burden of establishing general jurisdiction at this stage, the Court will order jurisdictional discovery on other grounds (discussed below); as a result, it will require the individual Defendants to identify their states of residence before definitively ruling on general jurisdiction.

B.    Specific Jurisdiction

Even in cases where general jurisdiction is unavailable, a court may exercise specific jurisdiction to adjudicate only those claims arising out of or relating to a defendant's contacts with the forum state. See Goodyear, 564 U.S. at 919 (noting that specific jurisdiction covers only those "issues deriving from, or connected with, the very controversy that establishes jurisdiction") (quotation marks omitted). As jurisdiction must comport with both due process and the forum state's long-arm statute, Urquhart-Bradley v. Mobley, 964 F.3d 36, 44 (D.C. Cir. 2020), courts generally turn first to the statutory question. See, e.g., GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).

D.C.'s long-arm statute authorizes courts to exercise jurisdiction over non-resident defendants who, in relevant part,

> (1) transact[] any business in [D.C.] . . . [or]
> (4) cause[] tortious injury in [D.C.] by an act or omission outside [D.C.] if [they] regularly do[] or solicit[] business, engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed, or services rendered, in [D.C.]

D.C. Code § 13-423(a). Kirven invokes these two subsections, although she does not expressly map all her allegations onto them. See Opp. at 6–16. Viewing the record in the light most favorable to Plaintiff, the Court considers the entirety of her allegations under each subsection, beginning with (a)(1).

        1.      *Subsection 13-423(a)(1)*

Plaintiff first contends that the individual Defendants "transacted business in" D.C. under subsection (a)(1). Id. at 6 (formatting altered). As noted above, the Due Process Clause permits courts to adjudicate claims that arise out of or relate to a defendant's contacts with the forum state. Goodyear, 564 U.S. at 919. Our circuit treats subsection (a)(1) as "coextensive . . . with the Constitution's due process limit," Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987), meaning that the "statutory and constitutional" inquiries "merge" here. Urquhart-Bradley, 964 F.3d at 44 (quotation marks omitted). Specific jurisdiction therefore exists where a defendant has "minimum contacts" with the forum such that he "should reasonably anticipate being haled into court there." Id. (alteration removed) (quotation marks omitted). That is, there must be "a relationship among the defendant, the forum, and the litigation such that the defendant's suit-related conduct creates a substantial connection with the forum." Id. (alterations removed) (quotation marks and citation omitted). Finally, actions conducted in the scope of employment count when assessing a defendant's contacts. Id. at 45–46.

Although the inquiry is necessarily fact specific, see Tierney v. de Wet, 695 F. Supp. 3d 69, 86 (D.D.C. 2023) ("no mechanical test for determining" jurisdiction "over an individual defendant who acted on behalf of an organization") (quotation marks omitted), caselaw provides some guidance. For example, in Urquhart-Bradley, the plaintiff alleged that a non-resident CEO personally "reached into the District" by terminating her over the phone, "oversaw" the

company's D.C. office, maintained "continuing contacts" with District-based employees, appointed and later removed the plaintiff from his leadership team, and "engaged in a series of adverse communications" with her. See 964 F.3d at 48. The D.C. Circuit concluded that the plaintiff's allegations bore considerable "heft," though it remanded to the district court to determine whether the defendant's contacts were sufficient in the first instance. Id.; see also Urquhart-Bradley v. Cushman & Wakefield, Inc., 2020 WL 7495548, at *2 n.2 (D.D.C. Dec. 21, 2020) (parties stipulated to personal jurisdiction after remand).

Drawing on Urquhart-Bradley, courts in this district have found jurisdiction over defendant-employees where the plaintiff alleged specific and sustained ties to this city. See, e.g., US Dominion, Inc. v. Herring Networks, Inc., 639 F. Supp. 3d 143, 164 (D.D.C. 2022) (defendants closely oversaw company's District operations and regularly traveled to D.C.); Tierney, 695 F. Supp. 3d at 86–87 (companies "registered" in District held board and shareholder meetings there, defendants attended such meetings, and documents "giving rise to alleged liability" were produced there); cf. Daughtry v. kmG Hauling, Inc., 2021 WL 4078686, at *3 (D.D.C. Sept. 8, 2021) (no jurisdiction where plaintiff failed to allege that defendant "took any specific action" related to company in D.C., suggesting only that he had "power" to take such actions).

Here, two immediate issues arise. First, several of Plaintiff's assertions are not attributed to the individual Defendants at all, focusing solely on NNPHI itself. See Opp. at 7–8, 11, 14 (e.g., "NNPHI maintains a D.C. office") (emphasis added). The Court excludes these NNPHI-specific contacts from its analysis. Second, other allegations implicate "Defendants" collectively, id. at 7–11, whereas jurisdiction "must be met as to each defendant." Rush, 444 U.S. at 332. To the extent Kirven's assertions can be delineated on a defendant-by-defendant

7

basis, she advances five core allegations: that the individual Defendants participated in "D.C. conferences," "controlled access" to NNPHI's D.C. office, participated in the termination of a District-based employee, engaged with the District's employment system, and oversaw business and operational functions tied to the city, including relationships with D.C. vendors. See Opp. at 6–16. She further alleges that Ramsey is "NNPHI's registered agent in the District." Id. at 8.

Unlike in Urquhart-Bradley and the cases noted above where jurisdiction was found, Kirven's allegations lack detail regarding the frequency, extent, and degree of Defendants' involvement. For example, bare "recurr[ence]" of conferences, id. at 9, says little about how frequently those conferences occurred. Her other assertions are also thin. She maintains that Defendants "controlled access" to NNPHI's D.C. office through "key fobs, parking credentials, and sublease" arrangements, id. at 7, but it is unclear whether Defendants regularly accessed the office themselves, managed access for others, or merely exercised general oversight responsibility. Likewise, her assertions that Defendants "oversaw" relationships with D.C. vendors, "participat[ed] in the District's unemployment[-]insurance system," and "execut[ed]" Plaintiff's termination are void of clarifying detail. Id. at 8–9, 15–16.

To be sure, it is entirely plausible that one or more Defendants maintained sufficient contacts with the District as executives of an organization with a D.C. office and workforce. Kirven's allegations point in that direction, but they ultimately lack the specificity necessary to clear the hurdle at this stage.

### 2.    *Subsection 13-423(a)(4)*

Invoking subsection (a)(4), Kirven next alleges that "[D]efendants engaged in a persistent course of conduct" in D.C. See Opp. at 9 (formatting altered). For a court to possess jurisdiction under this subsection, a plaintiff must establish that 1) she "suffered a tortious injury" here; 2)

"the injury was caused by the defendant's act or omission outside of the District"; and 3) one of three "plus factors" is satisfied. Hindu Am. Found. v. Viswanath, 646 F. Supp. 3d 78, 93–94 (D.D.C. 2022) (quotation marks omitted). There are three such factors: the defendant was "regularly" doing or soliciting business, "engag[ing] in any other persistent course of conduct," or "deriv[ing] substantial revenue from goods used or consumed, or services rendered, in the District." Id. at 93 (quoting § 13-423(a)(4)).

The "plus factor" must be "separate from and in addition to the in-state injury," serving "'to filter out cases in which the in[-]forum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.'" Id. at 94 (quoting Carr, 814 F.2d at 762–63). And the alleged contacts "must at least be continuing in character." Id. (quotation marks omitted). Subsection (a)(4) is thus "more restrictive than the Due Process Clause[,]" "meaning the District government has made a deliberate decision not to allow access to D.C. courts to every person who is injured here and otherwise could bring a claim for civil redress." Id. (emphasis added) (quotation marks omitted).

Here, Kirven satisfies the first (a)(4) requirement. She alleges several tort claims, including intentional infliction of emotional distress, defamation, and negligence. See Third Am. Compl., ¶¶ 9.4.3–9.4.8. Although she does not expressly situate her purported injuries in the District, the Court may reasonably infer that at least some of them may have occurred here while Kirven worked in NNPHI's D.C. office.

The second requirement, however, is not fulfilled. Plaintiff asserts that "the events giving rise to [her] claims occurred in" D.C., see Third Am. Compl., ¶ 2.1, which directly contravenes subsection (a)(4)'s requirement that the injury be caused by conduct "outside the District." D.C. Code § 13-423(a)(4) (emphasis added). Nor does she identify any other location where the

9

conduct occurred.  Subsection (a)(4) is therefore unavailable to her.  The Court nonetheless turns to the remaining requirement: whether any "plus" factor is satisfied.

Kirven relies exclusively on the "persistent course of conduct" factor, see Opp. at 9 (formatting altered), so the Court focuses its analysis there.  To satisfy (a)(4), the "course of conduct" must occur in the District.  See D.C. Code § 13-423(a)(4).  As such, "[t]he fact that a defendant" has merely "directed his conduct toward [D.C.] is insufficient to establish a 'persistent course of conduct'" here.  Lewy v. S. Poverty L. Ctr., 723 F. Supp. 2d 116, 124 (D.D.C. 2010) (quoting § 13-423(a)(4)).  For example, while communications directed into the District from another state may support jurisdiction under subsection (a)(1), courts have held that such communications do not constitute a "course of conduct" under subsection (a)(4) because the conduct must occur in D.C.  Compare Urquhart-Bradley, 964 F.3d at 48 (crediting non-resident defendant's phone call to D.C.-based employee for purposes of (a)(1)), with Tavoulareas v. Comnas, 720 F.2d 192, 193–94 (D.C. Cir. 1983) (defendant's calls from outside D.C. to individuals in District did not constitute "'course of conduct in the District' for purposes of (a)(4)"), and Burman v. Phoenix Worldwide Indus., 437 F. Supp. 2d 142, 153–54 (D.D.C. 2006) (same, where out-of-state defendant made 1,000-plus phone calls into District).

The only allegation that Plaintiff expressly locates in the District is that Defendants "engaged in recurring D.C. conferences."  Opp. at 9.  Even if all Defendants attended those conferences in person (rather than virtually from another state), conference attendance satisfies subsection (a)(4) only if it is sufficiently "continuing in character."  Viswanath, 646 F. Supp. 3d at 94 (quotation marks omitted).  Courts have therefore rejected conference attendance as a basis for persistent conduct where plaintiffs provided no evidence that the conferences were "regular in nature or otherwise exemplif[ied] a persistent course of conduct."  Burman, 437 F. Supp. 2d at

10

153; see also DBW Partners, LLC v. Mkt. Sec., LLC, 2024 WL 3741414, at *15 (D.D.C. Aug. 10, 2024) (virtual attendance at events not persistent).  The same result follows here, as Kirven alleges only that the conferences were "recurring," Opp. at 9, offering no further detail regarding their frequency.  She thus strikes out on subsection (a)(4).

   C.      Jurisdictional Discovery

   Kirven argues that if the Court is disinclined to find jurisdiction, it should at least permit jurisdictional discovery.  See Opp. at 17–19.  A court has "broad discretion in its resolution of [jurisdictional] discovery[,]" and "[t]he standard for permitting jurisdictional discovery is quite liberal."  App Dynamic ehf v. Vignisson, 87 F. Supp. 3d 322, 329 (D.D.C. 2015) (quotation marks omitted).  In general, jurisdictional discovery should be "granted freely" so long as the plaintiff demonstrates "a good faith belief that such discovery will enable [her] to show that the court has personal jurisdiction over the defendant" and she "include[s] some facts about what additional discovery could produce."  Id. (quotation marks omitted).

   Plaintiff identifies five areas for discovery that purportedly bear on the individual Defendants' contacts with the District.  See Opp. at 18.  Her request is specific and targeted at relevant information.  Id. (seeking records concerning named D.C.-based vendors and Defendants' access to D.C. office and management of District-related work); compare Staggs v. Smith & Wesson, 2022 WL 444110, at *8 (D.D.C. Feb. 14, 2022) (ordering discovery where plaintiff sought business records that could connect defendant to D.C.), with Livnat v. Palestinian Auth., 851 F.3d 45, 57–58 (D.C. Cir. 2017) (denying discovery where plaintiffs "fail[ed] to tie their jurisdictional theory to [defendant's conduct] with specific facts").  Kirven specifically explains how such discovery could "demonstrate that Defendants' conduct was . . . directed through their D.C.-connected decision-making structure." Opp. at 18; cf.

11

Makadet LLC v. Sweet Grace Distilling Co., 2024 WL 4650921, at *5 (D.D.C. Oct. 31, 2024) (denying discovery where plaintiff "never explains what it specifically hopes to achieve via discovery"). This suffices, as a plaintiff need show only that discovery "can supplement" her allegations. Vignisson, 87 F. Supp. 3d at 329 (quoting GTE New Media Servs. Inc.,199 F.3d at 1351). It is not inconceivable that further information about the individual Defendants' presence in the D.C. office and District-related work could bolster Kirven's allegations. See, e.g., Urquhart-Bradley, 964 F.3d at 49 (discovery into defendant's D.C.-related "business activities" would "undoubtedly" be useful because it would "flesh out" his contacts with forum) (quotation marks omitted).

To be sure, a plaintiff may not engage in a "fishing expedition," Lewis v. Mutond, 62 F.4th 587, 596 (D.C. Cir. 2023) (quotation marks omitted). But Kirven casts her line in good faith and with sufficient specificity. The Court therefore will grant her discovery request.

## IV.    Conclusion

The Court will thus hold the Motion to Dismiss in abeyance pending jurisdictional discovery and direct Defendants Lafronza, Alexander, and Ramsey to file declarations identifying their respective residences. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 30, 2026