**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTINA KIRVEN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NATIONAL NETWORK OF PUBLIC HEALTH INSTITUTES, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 25-2506 (JEB)** |

**MEMORANDUM OPINION**

Plaintiff Christina Kirven brought this *pro se* employment action against her former employer — a nonprofit called the National Network of Public Health Institutes (NNPHI) that has one of its offices in D.C. — and three of its executives. Fired for purported corporate-expense misconduct, she alleges that Defendants engaged in a campaign of retaliation and discrimination that culminated in her wrongful termination. Individual Defendants Vincent Lafronza (President and CEO), Tyra Alexander (Director of Human Resources), and Kim Ramsey (Senior Vice President for Finance and Administration) moved to dismiss for lack of personal jurisdiction. Finding material gaps in the record, the Court held the Motion in abeyance pending jurisdictional discovery. Now that such discovery is complete, the Court will grant the Motion and dismiss Individual Defendants from the case.

## I. Background

An account of the factual background appears in the Court's prior Opinion. See Kirven v. Nat'l Network of Pub. Health Institutes, 2026 WL 1878466, at *1 (D.D.C. June 30, 2026). In short, Kirven, a Black woman, contends that NNPHI management paid her less than similarly

situated peers and retaliated against her when she voiced concerns about the workplace, accusing her of expense misconduct and ultimately firing her. Id.; see also ECF No. 27-2 (Third Am. Compl.), ¶¶ 9.1–9.5 (alleging violations of state and federal employment laws, as well as several torts). She seeks various forms of relief, including reinstatement, damages, and modification of her personnel records. Kirven, 2026 WL 1878466, at *1; Third Am. Compl., ¶¶ 10.1–10.9.

The three executives moved to dismiss for lack of personal jurisdiction, while NNPHI answered the Complaint. Kirven, 2026 WL 1878466, at *1; see generally ECF Nos. 28 (MTD); 36 (Answer). In her Opposition to their Motion, Kirven requested jurisdictional discovery in the event that the Court did not initially find jurisdiction. Kirven, 2026 WL 1878466, at *6; see ECF No. 30 (Opp.) at 17–19. Although it determined that Kirven's allegations "lack[ed] the specificity necessary" to establish personal jurisdiction, Kirven, 2026 WL 1878466, at *4, the Court in June declined to rule definitively on the issue, reasoning that she had identified in good faith several specific areas bearing on Individual Defendants' contacts with the District. Id. at *6. It accordingly exercised its "broad discretion" to grant her request, ordering Individual Defendants to submit declarations identifying their residences and holding their Motion in abeyance pending further jurisdictional discovery. Id. (citation omitted).

The parties conducted such discovery throughout the summer of 2026, completing it in early September. See ECF No. 40 (Joint Status Report) at 1. Plaintiff then filed a supplemental memorandum summarizing the results, see ECF No. 41 (Supp.), and Individual Defendants responded. See ECF No. 42 (Resp.). Their Motion to Dismiss is now ripe.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss if the court lacks personal jurisdiction over her. The plaintiff bears the burden of establishing such

jurisdiction, Erwin-Simpson v. AirAsia Berhad, 985 F.3d 883, 888 (D.C. Cir. 2021), and must do so "as to each defendant." Rush v. Savchuk, 444 U.S. 320, 332 (1980). When considering such a motion, a court may "receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts" but must still "resolve any factual discrepancies in favor of the plaintiff." Chrishon-Skinner v. Jones, 2025 WL 1575674, at *2 (D.D.C. Jan. 8, 2025) (citation omitted); see also 5A Wright and Miller's Federal Practice & Procedure § 1351 (4th ed. Apr. 2026 update); Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). Conclusory statements, however, are insufficient to satisfy a plaintiff's burden. IMAPizza, LLC v. At Pizza Ltd., 334 F. Supp. 3d 95, 107–08 (D.D.C. 2018). While complaints filed by *pro se* parties must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520 (1972), such plaintiffs must still "make a prima facie showing of pertinent jurisdictional facts." United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 121 (D.D.C. 2000); see, e.g., Chrishon-Skinner, 2025 WL 1575674, at *5–7.

## III. Analysis

In its prior Opinion, the Court laid out the relevant doctrine. It rehearses the key points here, with a focus on applying them to the new universe of facts.

The Court may exercise personal jurisdiction over a defendant only if permitted by both D.C. law and the Constitution's Due Process Clause. See United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995). Personal jurisdiction may come in the form of general or specific jurisdiction. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). The Court addresses each in turn.

A. General Jurisdiction

Under both federal and D.C. law, general jurisdiction ordinarily turns on an individual defendant's domicile, Daimler AG v. Bauman, 571 U.S. 117, 137 (2014); D.C. Code § 13-422, which itself hinges on a person's "[r]esidence in fact" and "purpose to make the place of residence one's home." Texas v. Florida, 306 U.S. 398, 424 (1939); see also Kirven, 2026 WL 1878466, at *2. Because no Individual Defendant resides in D.C., the Court finds that general jurisdiction is lacking. See ECF Nos. 33 (Residence Declaration of Vincent Lafronza), ¶ 2 (South Carolina); 34 (Residence Declaration of Tyra Alexander), ¶ 2 (Louisiana); 35 (Residence Declaration of Kim Ramsey), ¶ 2 (same). Indeed, Plaintiff never argues the contrary — instead relying principally on Individual Defendants' remote interactions with her and their limited number of work trips to D.C. See Supp. at 1–2; Resp. at 9 (noting that Plaintiff does not appear to argue for general jurisdiction).

B. Specific Jurisdiction

Even in the absence of general jurisdiction, a court may exercise specific jurisdiction to adjudicate claims arising out of or relating to a defendant's contacts with the forum state, so long as doing so comports with the forum state's long-arm statute and constitutional due process. Goodyear, 564 U.S. at 919; Urquhart-Bradley v. Mobley, 964 F.3d 36, 44 (D.C. Cir. 2020). Kirven originally invoked two subsections of D.C.'s statute but now appears to press her arguments under only one — namely, D.C. Code § 13-423(a)(1). Compare Opp. at 6–16 (invoking D.C. Code § 13-423(a)(1), (4)), with Supp. at 2 (relying on § 13-423(a)(1) only). The Court starts with that subsection and then briefly considers the other given Kirven's *pro se* status.

1. *D.C. Code § 13-423(a)(1)*

D.C. law provides that a court "may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). The D.C. Court of Appeals has interpreted that subsection as "coextensive" with "the Constitution's due process limit," Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987) (citing Mouzavires v. Baxter, 434 A.2d 988, 990–92 (D.C. 1981) (*en banc*)), meaning that the inquiries "merge." Urquhart-Bradley, 964 F.3d at 44 (quotation marks and citation omitted). Courts therefore ask whether there are "minimum contacts between the defendant and the forum state such that the defendant should reasonably anticipate being haled into court there." Id. at 44 (cleaned up); see id. (holding that contacts may include conduct within scope of individual defendant's employment). "That is, there must exist a relationship among the defendant, the forum, and the litigation such that the defendant's suit-related conduct creates a substantial connection with the forum," id. (cleaned up) — for example, where the relevant conduct was "aimed" at the forum state. Id. at 48 (quoting Calder v. Jones, 465 U.S. 783, 789 (1984)); see also Holder v. Haarmann & Reimer Corp., 779 A.2d 264, 270–71 (D.C. 2001) (discussing conduct "directed at" the District).

Kirven maintains that Individual Defendants' contacts with D.C. create the requisite relationship to both the city and this litigation. See Supp. at 12. For all three executives, she principally relies on (1) their history of in-person work in D.C. and (2) their remote interactions with her, ostensibly a D.C.-based employee.

As to Lafronza, NNPHI's President and CEO, Plaintiff points to several contacts that appear to be unrelated to her claims, including eleven occasions on which he physically worked from the D.C. office in the year preceding her termination. See Supp. at 4; see also id., Exh. 1

(Vincent Lafronza Answers to Interrogatories), ¶ 13 (defining relevant period as June 23, 2024, to June 23, 2025, when Plaintiff was terminated). She also notes that he attended a leadership conference at the D.C. office in 2024, maintained a physical office next to hers in D.C. until late 2024, was identified in the employee directory as among NNPHI's "'DC' personnel," and participated in teams and remote meetings that she also took part in. See Supp. at 4. Finally, she further alleges that he personally initiated an inquiry into her expense reports, communicated with her about related concerns, and ultimately decided to terminate her — suit-related conduct that she contends is connected to D.C. because she was a D.C.-based employee. See Supp. at 5.

Those allegations are insufficient to establish personal jurisdiction. Critically, Kirven does not allege, let alone demonstrate, that Lafronza engaged in any conduct related to her expense reports or termination while he — or she — was present in D.C. To be sure, unrelated contacts with the forum (such as Lafronza's trips to D.C.) can support personal jurisdiction where allegations of related contacts also exist. See, e.g., Urquhart-Bradley, 964 F.3d at 48 (citing "continuing contacts with [D.C.] office and employees" alongside allegation that defendant "reached into the District of Columbia (over the telephone) to fire [plaintiff] from District-based employment"); US Dominion, Inc. v. Herring Networks, Inc., 639 F. Supp. 3d 143, 163–64 (D.D.C. 2022) (citing regular D.C.-directed communications and travel alongside allegation that defendants directed production of content at issue in D.C.); Tierney v. de Wet, 695 F. Supp. 3d 69, 86–87 (D.D.C. 2023) (citing fact that shareholder meetings were regularly held in D.C. alongside allegation that documents at issue were drafted there). But unrelated contacts, standing alone, cannot establish specific jurisdiction. See Goodyear, 564 U.S. at 919; see also Resp. at 12–14.

That leaves the argument that Lafronza's conduct outside D.C. was sufficiently "directed" at D.C. to justify the exercise of personal jurisdiction. See Calder, 465 U.S. at 790; Holder, 779 A.2d at 271. Recall that a court may weigh undisputed evidence from defendants "in determining the jurisdictional facts," provided that it "resolve[s] all factual discrepancies in favor of the plaintiff." Chrishon-Skinner, 2025 WL 1575674, at *2 (citation omitted). To connect Lafronza's out-of-state, claim-related conduct to D.C., Kirven relies on the proposition that her own employment was "D.C.-based," apparently on the theory that his conduct was therefore directed here. See Supp. at 11. Regardless of the legal merits of that argument, cf. Walden v. Fiore, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."), the undisputed record belies Kirven's characterization, which alone is too conclusory to carry the day.

Indeed, Kirven apparently resides in Maryland and was "classified as a Maryland employee based on her residence in Columbia, Maryland," pursuant to a post-pandemic NNPHI policy that classified employees "based on their state of residence." Resp., Exh. 1 (Declaration of Vincent Lafronza), ¶¶ 10–12; see also Supp. at 11–12 (not disputing residence or post-pandemic policy); Third Am. Compl., ¶ 3.1 (stating that Kirven "is a resident of the D.C./Maryland/Virginia area and was employed by NNPHI in Washington, D.C."). By Individual Defendants' accounting, she did most of her work from home, reporting to NNPHI's D.C. office on only 125 of the 681 total days she worked for NNPHI — less than 20% of the time. See Resp. at 17 (citing Resp., Exh. 3 (Declaration of Tyra Alexander), ¶¶ 4–5); Supp., Exh. 10 (Vincent Lafronza Responses to Requests for Admission) at 10 ("Plaintiff primarily performed work . . . from her home in Columbia, Maryland."). Such remote work is consistent with Individual Defendants' more general (and undisputed) characterization of the D.C. office as

a "ghost office" and of NNPHI as a "fully remote company" that "maintains its headquarters in New Orleans and its office in [D.C.] for use . . . as needed." Lafronza Decl., ¶¶ 9, 14.

For her part, Kirven merely asserts that she held a "D.C.-assigned position," citing her offer letter, the employee directory, operational tasks that she performed at the D.C. office, and the fact that her compensation was indexed to the D.C. area. See Supp. at 4–6. Nowhere does she allege any fact that contradicts Individual Defendants' account of NNPHI's post-pandemic employee-classification system or their count of her in-person workdays — making the bare assertion that her employment was based in D.C. too conclusory to credit for purposes of the "highly realistic" jurisdictional inquiry. Thompson Hine, LLP v. Taieb, 734 F.3d 1187, 1190 (D.C. Cir. 2013) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)); see IMAPizza, LLC, 334 F. Supp. 3d at 107–08 (deeming conclusory statements insufficient). She effectively concedes, moreover, that she was not in D.C. at the time of her termination, and she identifies no other claim-related conduct that occurred while she was here. See Supp. at 5 (arguing that jurisdiction "does not depend on Plaintiff's physical location" during termination call); cf. Mills v. Anadolu Agency NA, Inc., 105 F.4th 388, 396–97 (D.C. Cir. 2024) (emphasizing claim-related conduct that occurred in D.C. in finding personal jurisdiction). The Court thus has little reason to infer that Lafronza's claim-related conduct was "intentionally directed" at D.C. Calder, 465 U.S. at 790; see also Holder, 779 A.2d at 270–71 (stating that to satisfy requirements of D.C. Code § 13-423(a)(1), "the plaintiff must show that the defendant has purposefully engaged in some type of commercial or business-related activity directed at District residents") (emphasis added). Kirven's allegations thus do not justify the exercise of personal jurisdiction over Lafronza under D.C. Code § 13-423(a)(1).

The same goes for Alexander and Ramsey. Plaintiff alleges that they attended the aforementioned leadership conference, participated in some of the same virtual team meetings as she did, communicated with her about expenses, and helped implement her termination. See Supp. at 6–10. Alexander, as Director of Human Resources, also issued the employment offer letter that specified Kirven's (apparently unenforced) in-office requirement of two days per week. Id. at 9; see also Lafronza Decl., ¶ 18 (stating that NNPHI "did not enforce this policy"). Ramsey, as Senior Vice President for Finance and Administration, took a handful of work trips to D.C. and served as NNPHI's registered agent in the city. Id. at 6–8.

None of that changes the jurisdictional calculus. As with Lafronza, Plaintiff's allegation of claim-related contacts with D.C. hinges entirely on her alleged formal status as a D.C.-based employee. For the reasons explained above, that does not license the inference that Alexander's or Ramsey's claim-related conduct was directed at the District. See Resp. at 14–20.

2. *D.C. Code § 13-423(a)(4)*

Kirven originally invoked D.C. Code § 13-423(a)(4) as an additional basis for jurisdiction. See Opp. at 9. Relevant here, it permits the exercise of personal jurisdiction where a claim arises from a defendant's "causing tortious injury in [D.C.] by an act or omission outside [D.C.] if he . . . engages in any other persistent course of conduct . . . in [D.C.]." D.C. Code § 13-423(a)(4); see Opp. at 9, 19 (invoking only "persistent course of conduct" prong); Kirven, 2026 WL 1878466, at *5 (noting that § 13-423(a)(4) is "more restrictive than the Due Process Clause") (quoting Hindu Am. Found. v. Viswanath, 646 F. Supp. 3d 78, 93–94 (D.D.C. 2022)).

The Court's prior conclusion that Kirven "strikes out on subsection (a)(4)," id., still stands — but for a different reason, at least as to Lafronza. While jurisdictional discovery has unearthed no novel "persistent course of conduct" in D.C. on the part of Alexander or Ramsey, it

does reveal that Lafronza took eleven work trips to D.C. in one year, which might be enough to clear the threshold. Cf. Crane, 814 F.2d at 763 (noting that "connections considerably less substantial than those it takes to establish general, all-purpose 'doing business'- or 'presence'-based jurisdiction" can clear the bar). At the same time, however, such discovery undermines the Court's prior assumption that a tortious injury occurred in the District since it shows that Kirven, a Maryland resident, visited the D.C. office on less than 20% of her workdays, including only eight days in 2025 before her June termination. See Alexander Decl., ¶ 5; Kirven, 2026 WL 1878466, at *5 ("Although [Kirven] does not expressly situate her purported injuries in the District, the Court may reasonably infer that at least some of them may have occurred there while Kirven worked in NNPHI's D.C. office."). Based on the record that now exists, the Court concludes that it is no longer reasonable to infer that Individual Defendants "caus[ed] tortious injury in" D.C. as required by § 13-423(a)(4), particularly in the absence of evidence to that effect from Kirven. See Erwin-Simpson, 985 F.3d at 888 (noting that plaintiff bears burden). It will thus decline to exercise personal jurisdiction over Individual Defendants pursuant to that subsection.

## IV. Conclusion

The Court will accordingly grant Individual Defendants' Motion and dismiss them from the case for lack of personal jurisdiction. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: November 13, 2026